IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KEVIN DAUGHERTY | § | |
| | § | CIVIL ACTION NO. 6:06cv556 |
| GEORGE STEPHENSON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Kevin Daugherty, a former inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

An evidentiary hearing was conducted on May 24, 2007, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Daugherty stated he pleaded guilty to driving while intoxicated, receiving a sentence of eight years' probation. A motion to revoke his probation was filed, but this motion was withdrawn and Daugherty's probation was amended to provide for placement in the SAF-P (substance abuse felony punishment) program.[1]

---

[1] Texas Board of Pardons and Paroles Policy Statement No. 04-01.07 defines the SAF-P program as "a parole-panel imposed special condition that will serve to confine and treat an offender and that requires the offender to participate in a post-release drug or alcohol abuse continuum of care treatment plan when a parole panel renders a finding, following a hearing or proceedings concerning alleged violations under Chapter 146 of the board rules, that the offender is a suitable candidate as determined by the suitability criteria." The program is of indeterminate length, ranging from 90 days to one year, the prisoner's maximum discharge date must exceed 18 months on the date of the panel decision, and there must be a finding that drug or alcohol abuse significantly contributed to the commission of the crime or violation of the terms of parole or mandatory supervision. *See* http://www.tdcj.state.tx.us/bpp/policies_directives/POL%2004-0107%20_SAFP_.pdf

Daugherty stated that the program involves three phases - orientation, treatment, and relapse prevention, totaling six months. He started that program officials make reports every 30 to 60 days on the inmate's progress or lack thereof. He said that he went into the program on September 30, 2004, and had a projected release date of April 28, 2005.

Daugherty testified that on January 12, 2005 he had an "initial placement call," which involved calling the probation officer, with a counselor present, to discuss possible release. He indicated that he was supposed to meet his counselor in person, but his counselor did not show up, and so a senior counselor came instead. The senior counselor, Clyde Graves, had made an error regarding Daugherty's behavior.

Specifically, Daugherty says, Graves stated that he, Daugherty, "continued to exhibit the same behavior" as he had at a December 7 meeting, but this involved a dispute over his medical care. Daugherty explained that he had cellulitis and got a seven-day cell pass, which expired over a weekend; the nurse told him to stay in his bunk until he saw the doctor on Monday, but that Monday, before he could see the doctor, a counselor "screamed" at him for being in his bunk.

Because of Graves' report, Daugherty said that he was not eligible for initial placement, but had to wait another 30 days. He again said that Graves' allegation that he was exhibiting the same behavior was not true.

On February 8, 2005, Daugherty said, he was told about a report to be submitted to the Smith County district court, which included information about sanctions which the counselor had imposed on him on January 13, the day after the initial placement phone call. Daugherty testified that in the SAF-P program, inmates are held accountable by their peers, and that a fellow inmate had found some of his behavior unacceptable and filed a report about it. This behavior was not related to his phone call on January 12. Daugherty filed an appeal of the sanctions imposed on him, and they were overturned on January 14, one day later.

Daugherty explained that a counselor named Ming came to him on February 8 and asked him to sign the report, which would be sent to the court and which included information about the

sanctions. Daugherty refused to sign, saying that the sanctions had been overturned, but Ming said no, the report reflected was what was in his file. Daugherty said that he did sign the report, not wanting to receive additional sanctions, but went to Graves and told him the situation. Graves told him that the judge's report was not appealable, that Daugherty had had the chance to make comments on the back, and that the report was the counselor's assessment of Daugherty's progress. Daugherty then went to Graves' superior, Loman, whom he says was initially in agreement with him. Daugherty testified that they had a meeting on February 16, and Loman called Graves to the meeting. Graves "got mad" and Daugherty was excused from the meeting, he said, and when he returned, Loman had changed his mind and was in agreement with Graves. On February 22, Daugherty filed his Step One grievance, asking for placement in a half-way house and for a corrected copy of the report to be sent to the court. The response to the grievance was that a corrected report had been sent to the court.

Daugherty says that the amended report had been re-worded in a way that he didn't understand it, but when he complained, he was told that "this was the amended report and this is what he was going to get." Daugherty was asked if he wanted to continue with treatment and he said no, so he was put in lockup for 49 days until he could be sent back to Smith County. He filed a Step Two grievance during this time period, because he was dissatisfied with the Step One response.

Daugherty again said that he did sign the amended report, but added that the situation should not have been on there at all. To the best of his knowledge, the amended report was sent to Judge Russell. He refused further treatment because he believed that he should have been sent in a half-way house or at least awaiting a bed there.

Daugherty stated that he was given a half-way house designation for August, but this was four months after he was supposed to be designated for half-way house placement, since his initial projected release date was March 28. He refused this designation and refused to continue with the SAF-P program, and was placed in solitary confinement. While there, Daugherty said, he filed his Step Two grievance, and on May 16, he received a notice saying that an extension of time was being

given on his Step Two.  A few days later, he was bench-warranted out of the prison and sent back to Smith County, and did not return to the prison until November.  At that time, he wrote and asked for his Step Two grievance, and when he got it, he saw that it had been "fraudulently dated" May 12, which he says is before the extension was even requested.  In Smith County, Daugherty said, his probation was revoked and he received an eight-year prison sentence.

Warden Wesley Pratt, a TDCJ official present at the Spears hearing, testified under oath concerning the contents of Daugherty's prison records.  He said that according to Daugherty's travel card, Daugherty had refused to complete the program, and so his probation was revoked.  He also noted that the SAF-P program was essentially the same as another program, known as PRTC (pre-release therapeutic community); Daugherty stated that SAF-P dealt with prisoners on probation, while PRTC involved inmates seeking parole, and Warden Pratt acknowledged that this was correct, although the programs were otherwise similar.

Chip Satterwhite, a TDCJ Regional Grievance Coordinator, said that Daugherty had filed his Step One grievance on February 22, 2005, and it was answered on April 11, 2005.  He filed his Step Two appeal on April 15 at the Johnston Unit, and it was sent to Huntsville.  From there, Satterwhite said, the grievance went to the Regional Grievance Office at the Beto I Unit for processing.  The response was due on May 20, 35 days after it was filed.

Satterwhite said that the grievance was still in the regional office on May 12, and so the office personnel prepared an extension form, and a notice was sent to Daugherty to let him know that the grievance might not come back to him timely.  Meanwhile, the grievance was still being processed, and it was signed on May 12.  Once the Step Two grievance was signed, it was sent to Huntsville to be closed out on the computer, which was done on May 19, and so Daugherty did not get it back before being bench warranted back to Smith County on May 26.  When he returned to TDCJ in November, he asked for and got a copy of the grievance, which showed the signature date of May 12.  Satterwhite said that this was why the grievance was signed before the extension notice, which was dated on May 16, 2005.

Daugherty testified that he was suing Warden Stephenson because he did not receive all of the relief which he had requested in his Step One grievance. Although an amended report had been prepared for the judge in Smith County, Daugherty said that he had also requested transfer to a half-way house. Satterwhite stated that the unit warden did not have the authority to send him to a half-way house, and that the reason that Daugherty did not go to the half-way house was because he had refused to complete the program.

Next, Daugherty contended that Ming and Graves, the counselors in the program, were "intentionally negligent" because they knew about the errors in the report and would not fix it. Similarly, he said, Loman agreed that the report was incorrect but did nothing to correct it.

Daugherty said that he sued Robert Shultz, the director of the SAF-P program, because Shultz was at a meeting on February 19 when the erroneous report was discussed. Daugherty stated that Shultz agreed that a corrected report was needed, but one was not issued until two months later.

Daugherty stated that Barbara White, a placement coordinator at the unit, served as release coordinator. She had issued the request for the bench warrant back to Smith County, which Daugherty described as a "misleading document."

Daugherty also said that he sued Rhoda Odom, who had signed the Step Two grievance, because she had "committed fraud" regarding the date of the grievance. Finally, he sued Edith Petty, a grievance investigator, for manipulating the grievance process; he said that Petty had signed the extension for the Step Two grievance, which was dated after the grievance had been answered by Odom.

Legal Standards and Analysis

Daugherty's primary complaint is that an incorrect report had been sent to Judge Russell, in that this report contained references to sanctions which had been overturned. At one time, the Fourth Circuit held that a claim of constitutional magnitude may be stated if an inmate shows that false information is in his file which is relied upon to a constitutionally significant degree. Paine v. Baker, 595 F.2d 197, 201 (4th Cir.), *cert. denied* 444 U.S. 925 (1979); *see also* Guthrie v. Evans, 93 F.R.D.

390, 395 (S.D. Ga. 1981) *and* McCrery v. Mark, 823 F.Supp. 288, 291 (E.D.Pa. 1993). The Fourth Circuit made clear that the fact that merely because an inmate disputes evaluations and opinions concerning him does not show that the information is false. Paine, 595 F.2d at 201.

However, Paine has been questioned by the Fifth Circuit and other courts, including the Fourth Circuit itself. Paine arose in the context of information in a parole file, and because inmates have no constitutional right to release on parole, the courts, including the Fifth Circuit, have concluded that there are no procedural due process protections for procedures unrelated to protected liberty interests. Johnson v. Rodriguez, 110 F.3d 299, 308-09 and n. 13. (5th Cir. 1997). In Johnson, the Fifth Circuit expressly stated that because Texas prisoners have no protected liberty interest in parole, they cannot mount a challenge against any state parole review procedure on procedural or substantive grounds. Johnson, 110 F.3d at 308. This includes contentions concerning allegedly false information; the Fifth Circuit concluded that Johnson's allegation that the Board considers unreliable or even false information in making parole determinations, without more, did not assert a federal constitutional violation.

In this case, the apparently false information was contained in a report sent to Judge Russell, and the result was to delay Daugherty's projected release date to August of 2005. Assuming this is correct, Daugherty has not shown a constitutional violation because he had no constitutionally protected liberty interest in a release date at any particular time. When he entered the program, he received a projected release date, but there was no liberty interest attached to this projected date, because his timing of his actual release was too speculative. *See* Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir. 2000). Consequently, the fact that this release date may have been changed did not implicate a constitutionally protected liberty interest, regardless of whether or not this change was brought about by a report containing incorrect information.

Even were the Paine test applied, Daugherty's claim would still lack merit, because he has not shown that the alleged falsification of the records has been relied upon to a constitutionally significant degree. Under Rodriguez, Daugherty's claim would likewise fail because the claim does

not assert a federal constitutional violation. Whether or not Daugherty's claims concerning the allegedly incorrect report, and the failures to correct it, set out a violation of prison regulations or state law, he has shown no constitutional violation, and so his claim on this point is without merit. Hernandez v. Estelle, 788 F.2d at 1158; Myers v. Klevenhagen, 97 F.3d at 94.

      Nor has Daugherty shown any constitutionally liberty interest in the SAF-P program itself, or his ability to continue in it. Prison officials may arbitrarily determine whether to provide prisoners with privileges amounting to more than reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, subject to the constitutional requirement that substantial differences in treatment must have a rational basis rather than being wholly arbitrary and capricious. Green v. McKaskle, 788 F.2d 1116, 1125 (5th Cir. 1986). However, the Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration. Newman v. Alabama, 559 F.2d 283, 291 (5th Cir. 1977). This includes rehabilitation programs such as SAF-P. In addition, as noted above, Daugherty himself refused to continue in the program, thus waiving any right which he may have had to do so.

      Next, Daugherty complains that his grievance was processed incorrectly, saying that the grievance records were "falsified." Satterwhite's testimony at the evidentiary hearing showed that what had happened was that the notice of extension was being processed at the same time as the Step Two grievance itself, and the grievance happened to be signed before the extension notice. Even beyond this, however, Daugherty has not shown that a constitutional violation took place. As a general rule, the Fifth Circuit has held that prison grievance procedures do not give rise to constitutionally protected liberty interests. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Mann v. Adams, 855 F.2d 639 (9th Cir.), *cert. denied* 109 S.Ct. 242 (1988) *and* Flick v. Alba, 932 F.2d 728 (8th Cir. 1991). The fact that a notice of extension was signed after the grievance itself was answered does not show that a constitutional violation took place. Daugherty's claim on this point is without merit.

Finally, the fact that Daugherty's probation was revoked also does not show that a constitutional violation took place. Daugherty conceded that he refused to complete the program, and the prison records show that his probation was revoked because of this refusal. As Daugherty said, the terms of his probation, after the initial motion to revoke was withdrawn, included the SAF-P program, and when he refused to continue the program, his probation was revoked. To the extent that Daugherty complains about the revocation of his probation after his refusal to complete the program, this complaint is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Daugherty's claims lack any arguable basis in law and fail to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **24** day of **October, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE